## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In Re:  Case No. 20-03322

Chapter 11 (Subchapter V)
AUTHENTIKI, LLC, et al.[1]  Jointly Administered

Debtors.  Honorable James W. Boyd

_____/

## DEBTORS' BRIEF IN SUPPORT OF CONFIRMATION OF THEIR
## SUBCHAPTER V PLAN OF REORGANIZATION

The above-captioned debtors (the "Debtors")[2], through their counsel Schafer and Weiner,

PLLC, for their *Brief in Support of Confirmation of Their Subchapter V Plan of Reorganization*

(the "Confirmation Brief"), state:

### BACKGROUND

1.     On October 29, 2020, each of the Debtors voluntarily commenced a bankruptcy

case under Subchapter V of Chapter 11 of Title 11of the United States Code, 11 U.S.C. § 101, *et*

*seq.* (the "Bankruptcy Code").[3]

2.     The Subchapter V Cases are being jointly administered. *See* DN 26.

3.     The Debtors filed their *Subchapter V Plan of Reorganization* [DN 82] (the "Plan")

with this Court on January 28, 2021. *See* DN 82.

---

[1]  The Debtors are Authentiki, LLC, Case No. 20-03322 and MSSH, LLC, Case No. 20-03323.

[2] Except as otherwise noted herein to the contrary, all capitalized terms have the meanings ascribed
to them in the Plan (defined herein) or the Modified Plan (defined herein) as the case may be.

[3] Except as otherwise noted to the contrary, all section references herein are references to sections
of the Bankruptcy Code. Further, any reference to docket, docket number or DN are references to
the docket or docket numbers in the above-captioned bankruptcy case.

4.    On February 12, 2021, the Court entered its *Order Scheduling Confirmation Hearing and Establishing Related Deadlines* [DN 88] (the "Scheduling Order"), whereby the Court established certain deadlines related to the Plan and Creditor voting.

5.    Debtors timely transmitted ballots to the Holders of Impaired Claims and Interests in accordance with the Scheduling Order and Bankruptcy Rule 3018 and served copies of the Plan and the Scheduling Order on all required parties.   *See* DN 100.

6.    On March 12, 2021, the Debtors filed their *Plan Supplement* [DN 107] and *Modification to Debtors' Subchapter V Plan of Reorganization* [DN 106] (the "Plan Modification" and together with the Plan and *Plan Supplement*, the "Modified Plan") and served copies of those documents on all required parties. *See* DN 109.

7.    Under the Plan and Modified Plan, the Debtors are not liquidating and are continuing in business after consummation of the Modified Plan.

8.    A proposed confirmation order (the "Confirmation Order") will also be filed on March 29, 2021. .

**Objections and Voting on the Plan**

9.    No Creditor or other party-in-interest filed an objection to the Plan or Modified Plan on or before the March 25, 2021 deadline set by the Scheduling Order (the "Voting-Objection Deadline"). *See, generally,* docket. *See also* DN 88, § 3.

10.    Prior to the Voting-Objection Deadline, the Debtors received informal objections to the Plan from (i) JP Morgan Chase Bank, N.A. ("Chase"), (ii) Gordon Food Service, Inc. ("GFS"), (iii) the Office of the United States Trustee (the "UST"), (iv) the Small Business

Administration (the "SBA"), (v) the Internal Revenue Service (the "IRS"), and (vi) Levitation

Holdings, LLC ("Levitation").

11.     Each of the informal objections have been resolved by modifications to the Plan

contained in the Plan Modification or the Confirmation Order.

12.     On March 29, 2020, the Debtors filed their *Final Report on Tabulation of Votes*

*Cast by the Debtors' Creditors on the Debtor's Plan of Reorganization* [DN 129] (the "Voting

Report").

13.     Pursuant to the Voting Report, all Classes of Claims and Interests that submitted

ballots voted to accept the Plan.  Class IX submitted a ballot accepting the Plan subject to the

modifications contained in the Confirmation Order.

14.     The Court set the hearing for the confirmation of the Debtor's Modified Plan for

April 1, 2021. *See* DN 88.

### Relief Requested

15.     The Debtors respectfully request this Honorable Court enter an order substantially

in the form of the Confirmation Order (i) determining the modifications to the Plan contained in

the Modified Plan and Confirmation Order do not adversely change the treatment of any Class,

and ballots cast to accept or reject the Plan shall be deemed cast to accept or reject the Modified

Plan pursuant to Bankruptcy Rule 3019(a); and (ii) confirming the Modified Plan under section

1191(a) and 1129(a).

## Bases for Relief

### A. *A Disclosure Statement Was Not Required In This Case*

16.     Ordinarily, section 1125 requires a debtor to file a disclosure statement that contains adequate information. 11 U.S.C. §1125.  Section 1181(b) makes section 1125 inapplicable to a Subchapter V case unless the Court orders otherwise. 11 U.S.C. § 1181(b).  On February 11, 2021, the Court held a status conference by Zoom to consider, among other things, whether a disclosure statement was necessary in the Subchapter V Cases ("Plan Status Conference").  *See* DN 83.  At the Plan Status Conference, the Court determined that a disclosure statement was not necessary in the Subchapter V Cases.

### B. *The Modifications in the Plan Modification and Confirmation Order Should Be Approved*

17.     Section 1193(a) authorizes the debtor to modify its plan at any time before confirmation so long as the plan as modified complies with sections 1122 and 1123 (excepting section 1123(a)(8)).  *See* 11 U.S.C. § 1193(a); Bankruptcy Rule 3019(a).

18.     Section 1193(d) provides that "[if] the plan has been confirmed under 1191(a), any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless within the time fixed by the court, such holder changes such holder's previous acceptance or rejection."

19.     Sections 1193(a) and (d) are substantially identical to sections 1127(a) and (d).

20.     "Whether a proposed modification adversely affects a claim or interest is a mixed question of law and fact.  If a modification is immaterial, no resolicitation is necessary." 7-1127 COLLIER ON BANKRUPTCY P 1127.03[1][b].  "A modification is material if it affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." In re American Solar King Corp., 90 B.R. 808, 824 (Bankr

W.D. Tex. 1988) (holding that dilution of stock interests by 1% is immaterial), *cited by* In re Camperworld Business Trust, 2015 Bankr. LEXIS 2937, 20 (Bankr. D. Utah Sept. 1, 2015) (finding modification to be immaterial).

21.     Bankruptcy Rule 3019(a) further provides in pertinent part:

> If the court finds after hearing on notice to the trustee, any committee appointed under the [Bankruptcy] Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

22.     The Debtor filed the Plan Modification on March 12, 2021 prior to Voting-Objection Deadline and before confirmation of the Modified Plan. *See* DN 106.

23.     Based on comments from the Court at the Plan Status Conference, section 1(A) of the Plan Modification adds an additional provision to comply with the section 1193(c)(3)(B) and does not adversary affect the Claim of any Creditor.

24.     To resolve the informal objection of the IRS, the Debtors included section 1(B) of the Plan Modification, which addresses only the timing of fourth quarter 2020 FICA tax payment. Section 1(B) of the Plan Modification does not adversary affect the Claim of any Creditor.

25.     To resolve the informal objection of the UST, the Debtors included sections 1(C) and 1(D) of the Plan Modification.  Section 1(C) requires the Debtors to timely file quarterly disbursement reports, and Section 1(D) provides for revesting of assets in the event of conversion of the Subchapter V Cases to cases under Chapter 7 of the Bankruptcy Code. Section 1(C) and 1(D) of the Plan Modification do not adversary affect the Claim of any Creditor.

26.     To resolve the informal objection of the SBA, the Debtors included section 2(A) of the Plan Modification, which clarifies section 4.1.2 of the Plan, and only affects the SBA. Section 2(A) of the Plan Modification does not adversary affect the Claim of any other Creditor.

27.     To resolve the informal objection of Levitation, the Debtors included section 2(B) of the Plan Modification. This section increases the payout to Levitation from $125,000 to $150,000 and removes Levitation's approximately $515,000 Claim from Unsecured Creditor Pool. The net effect is an increase to approximately 17% for the return to Levitation and a significant increase to 52% in the return to the Debtors' Unsecured Creditors (inclusive of the payments to GFS contemplated by the Confirmation Order and discussed *infra*) from the estimated return contemplated under the Plan.  Section 2(B) of the Plan Modification does not adversary affect the Claim of any Creditor, and, in fact, improves the return to Unsecured Creditors.

28.     Section 2(C) of the Plan Modification provides only for revised plan projections that reflect the economic results of Plan Modification. Section 2(C) of the Plan Modification does not adversary affect the Claim of any Creditor.

29.     Section 2(D) of the Plan Modification affects only 59 Commerce Building, LLC by clarifying that the nonresidential lease between it and the Debtors is being rejected under section 365 notwithstanding anything to the contrary in Exhibit A to Exhibit 6.1 of the Plan.  After the Plan Modification was filed and on March 13, 2021, 59 Commerce Building, LLC and its sole owner, Mark Sellers III, filed their ballots accepting the Plan. *See* DN 114, 115, and 124.[4]

---

[4] 59 Commerce Building, LLC initially filed its ballot accept the Plan on March 13, 2021, but that ballot was improperly completed by its sole owner, Mark Sellers III, who signed the ballot in his individual capacity. *See* DN 115. Mr. Sellers also filed a ballot accept the Plan on for his Interest in Authentiki and Authentiki's Interest in MSSH on March 13, 2021. *See* DN 114 and 116.  On March 24, 2021, 59 Commerce Building, LLC refiled its ballot correcting for its prior error. *See* DN 124.

30.     To resolve the informal objection of Chase, the Debtors included section 4 of the Confirmation Order, which provides (i) Chase's Claim will be Allowed after PPP forgiveness is determined to the extent it is not forgiven and (ii) restricts to non-bankruptcy forums the Debtors' opportunity to challenge any PPP forgiveness determination. Section 4 of the Confirmation Order does not adversary affect the Claim of any Creditor.

31.     To resolve the informal objection of GFS as well as various motions filed by GFS and to continue the supply of necessary product to the Debtors, the Debtors included section 5 of the Confirmation Order. *See* DN 58 and 59. Section 5 of the Confirmation Order resolves all of GFS's pending motions and assumes the payment and supply agreement between GFS and Debtors under Section 365 on modified terms. Section 5 of the Confirmation Order affects the timing of payments to GFS, but does not affect the amount of payments made to other unsecured creditors, or adversely affect the Claim of any Creditor.

32.     As a result, the modifications contained in the Plan Modification and the Confirmation Order do not adversely change the treatment of the Claim of any Creditor or the Interest Holder. Instead, the Class IV, V, and VIII claimants' distributions are substantially increased.

33.     Therefore, the Debtors respectfully request that this Honorable Court (i) approve the modifications contained in the Plan Modification and the Confirmation Order under section 1193 and Bankruptcy Rule 3019 and (ii) deem votes cast to accept or reject the Plan as cast to accept or reject the Modified Plan.

### C. *The Modified Plan Should be Confirmed under Section 1191(a) and 1129(a)*

34.     Section 1191(a) provides that "[t]he court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph 15 of that section, of this title are met." 11 U.S.C. § 1191(a). The plan proponent bears the burden of proof on the section 1129(a) elements by a preponderance of the evidence.  In re Waterford Hotel, Inc., 497 B.R. 225, 261 (Bankr. E.D. Mich. 2013), *citing* In re Trenton Ridge Investors, LLC, 461 B.R. 440, 459-463 (Bankr. S.D. Ohio 2011).

35.     Here, the Modified Plan satisfied all of the elements of section 1129(a) and, thus, section 1191(a) is satisfied.  Importantly, no party in interest filed any objection to the Plan by the Voting-Objection Deadline.  *See, generally,* docket.

### i.  **Section 1129(a)(1) is satisfied**

36.     Section 1129(a)(1) requires that the Modified Plan comply with all of the applicable sections of the Bankruptcy Code, including sections 1122 and 1123.  *See, generally*, DN 82.

37.     Sections 1122 and 1123(a)(1) are satisfied because the Modified Plan places the Claims and Interests into three (3) Groups of administrative and priority claimants, seven (7) Classes of Creditor Claims, and two (2) Classes of Interest Holders.  *See* DN 82, Articles III and IV. Each Group or Class contains Claims or Interests substantially similar to the other Claims or Interests in that Class. Id.

38.     Section 1123(a)(2) is satisfied because the Modified Plan specifies which Classes are unimpaired under the Plan.  *See* DN 82, § 4.7.

39.     Section 1123(a)(3) is satisfied because the Modified Plan specifies which Classes are Impaired under the Plan.  *See* DN 82, §§ 4.1-4.6, 4.8-4.9.

40.     Section 1123(a)(4) is satisfied because the Modified Plan specifies the treatment of each Claim or Interest in a particular Class or Group and treats each such Claim or Interest alike. *See* DN 82, Articles III and IV.

41.     Section 1123(a)(5) is satisfied because the Modified Plan provides an adequate means for its implementation through the substantive consolidation of MSSH into Authentiki, which continues to operate following confirmation, and distribution of the Reorganized Debtor's projected disposable income over the three-year life of the Modified Plan consistent with 1191(c)(2)(A). *See* DN 82, Article V.

42.     Section 1123(a)(6) is inapplicable to the Modified Plan because Debtors are not issuing new equity to any Person under the Modified Plan. Rather, the Plan and Modified Plan contemplate that the Interests in Authentiki are not Impaired under the Plan and its organizational documents will continue to govern the Reorganized Debtor after the Effective Date. *See* DN 82, §§ 3.7, 5.1.

43.     Section 1123(a)(7) is satisfied because the Modified Plan contains only provisions consistent with the interests of Creditors and Interest Holders (as permitted under the Bankruptcy Code) and with public policy with respect to the continuation of Mark A. Sellers, III as the Reorganized Debtor's manager.

44.     Section 1123(a)(8) is inapplicable to the Subchapter V Cases by virtue of section 1181(a).

### ii.     Section 1129(a)(2) is satisfied

45.     Section 1129(a)(2) requires that the Debtors comply with the applicable provisions of Title 11. "The principal purpose of section 1129(a)(2) of the Bankruptcy Code is to assure that the plan proponents have complied with the disclosure requirements of section 1125 of the

Bankruptcy Code". In re Trans World Airlines, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995), *quoted by* In re City of Detroit, 524 B.R. 147, 251 (Bankr. E.D. MI 2014) (citing cases). Because the Court did not require the Debtor's to prepare a disclosure statement, the requirement of section 1129(a)(2) should be deemed satisfied or inapplicable.

### iii.    **Section 1129(a)(3) is satisfied**

46.    Section 1129(a)(3) requires that the Modified Plan has been proposed in good faith and not by any means forbidden by law. "[Good faith] is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re Waterford Hotel, Inc., 497 B.R. at 266, *quoting* In re Trenton Ridge Investors, LLC, 461 B.R. at 468. *See also* Hanson v. First Bank, 828 F.2d 1310, 1315 (8th Cir. 1987). There are two primary purposes to Chapter 11: (1) preservation of businesses as going concerns and (2) maximizing the assets recoverable to satisfy unsecured claims. In re Waterford Hotel, Inc., 497 B.R. at 266 (citing cases). Moreover, courts have found independent evidence of good faith where the plan was negotiated with parties-in-interest and where the creditors voted to approve the plan. In re Noble Int'l, Ltd., 2009 Bankr. LEXIS 5146, *16-*17 (Bankr, E.D. Mich. Nov. 30, 2009); In re Movie Gallery, Inc., 2010 Bankr. LEXIS 5778, *30 (Bankr. E.D. Va. October 29, 2010).

47.    Here, the Debtors negotiated the Modified Plan with the Creditor constituents, and all Classes of Claims and Interests overwhelmingly voted in favor of the Plan. *See* DN 129. Moreover, the Modified Plan served to preserve and maximize value for the bankruptcy estates, reorganize and rehabilitate the Debtors saving a local restaurant and its 52 jobs during the COVID-19 pandemic, and provide for a meaningful distribution to the unsecured creditors. *See* **Exhibit B**.

### iv. Section 1129(a)(4) is satisfied

48.     Section 1129(a)(4) requires that any payment made or to be made pursuant to the Modified Plan or in connection with the Subchapter V Cases be approved by this Court as reasonable.  The Plan provides for the payments of Administrative Claims through Group I, including Professionals, to the extent allowed by this Court (including consideration of section 330 with respect to Professionals). *See* DN 82, § 3.1.

### v. Section 1129(a)(5) is satisfied

49.     Section 1129(a)(5) requires the disclosure of the identity and affiliations of those individuals proposed to serve pursuant to the Modified Plan after confirmation.  Section 5.1 of the Plan specifies that the Reorganized Debtor will continue to be governed under and in accordance with its articles of organization and operating agreement, which specify that Mark A. Sellers, III is the managing member; and Mr. Sellers signed the Plan as Authentiki's managing member. *See* DN 82, § 5.1. Therefore, section 1129(a)(5) is satisfied.

### vi. Section 1129(a)(6) is satisfied

50.     Section 1129(a)(6) is satisfied because no governmental regulatory commission approval is necessary in the Subchapter V Cases.

### vii. Section 1129(a)(7) is satisfied

51.     Section 1129(a)(7)(A) is satisfied because each of Class I through Class IX have accepted the Plan meeting the requirement of section 1129(a)(7)(A)(i). *See* DN 129.

52.     Section 1129(a)(7)(B) is not applicable because no party has elected treatment under section 1111(b).

### viii.    Section 1129(a)(8) is satisfied

53.    Section 1129(a)(8) is satisfied because all Classes of Claims and Interests voted to accept the Plan. *See* DN 129.

### ix.    Section 1129(a)(9) is satisfied

54.    Section 1129(a)(9)(A) is satisfied because (i) section 3.1 of the Plan provides for the required payments to section 507(a)(2) claimants and (ii) there are no section 507(a)(3) claimants in the Subchapter V Cases. *See* DN 82, § 3.1.

55.    Section 1129(a)(9)(B) is satisfied because priority claims, if any, will be paid in accordance with section 1129(a)(9)(B) under section 3.3 of the Plan.

56.    Section 1129(a)(9)(C) of is satisfied because priority tax claims are paid in accordance with Section 1129(a)(9)(C)'s requirements under section 3.2 of the Plan. *See* DN 82, § 3.2.

57.    Section 1129(a)(9)(D) is inapplicable because there are no secured tax Claims in the Subchapter V Cases.

58.    As a result of the forgoing, the Plan satisfies section 1129(a)(9).

### x.    Section 1129(a)(10) is satisfied

59.    Section 1129(a)(10) is satisfied because all Classes of Creditors and Interest Holders that are Impaired under the Plan have accepted the Plan or Modified Plan. *See* DN 82, Article III. *See also* DN 129.

### xi.    Section 1129(a)(11) is satisfied

60.    Section 1129(a)(11) sets forth the "feasibility" requirement: "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or

reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).  To be feasible, a plan must offer "a reasonable prospect of success and is workable." In re Eastland Partners Ltd. Partnership, 149 B.R. 105, 108 (Bankr. E.D. Mich. 1992), *quoting* In re Monnier Brothers, 755 F.2d 1336, 1341 (8th Cir. 1985).  The plan does not need to guarantee success, but must present reasonable assurance of success." Gen. Elec. Creditr Equities, Inc. v. Brice Rd. Devs., L.L.C. (In re Brice Rd. Devs., L.L.C.), 392 B.R. 274, 283 (6th Cir BAP 2008), *quoting* In re Made in Detroit, Inc., 299 B.R. 170, 176 (Bankr. E.D. Mich. 2003) (*citing* Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988)), *aff'd* 414 F.3d 576 (6th Cir. 2005).  "Importantly, '[t]he Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility.'" Gen. Elec. Creditr Equities, Inc. v. Brice Rd. Devs., L.L.C. (In re Brice Rd. Devs., L.L.C.), 392 B.R. at 283, *quoting* 7 COLLIER ON BANKRUPTCY P. 1129.03[11] (15th ed. Rev. 2006) (*quoting* Computer Task Group, Inc. v. Brotby (In re Brotby), 303 B.R. 177, 191 (BAP 9th Cir. 2003)).  The debtor bears the burden of proof by a preponderance of the evidence that the plan is feasible. In re Made in Detroit, Inc., 299 B.R. at 176.

61.     Where the Plan contemplates funding from operating revenues, its past and present financial records are probative of feasibility. Id. (citing cases).  However, speculative, conjectural, or unrealistic predictions cannot be used to predict financial progress. In re Trevarrow Lanes, 183 B.R. 475, 482 (Bankr. E.D. Mich. 1995) (finding bowling alley's plan not feasible where there was a disconnect between past financial performance and plan projections coupled with debtor's historical inability to accurate project income); In re Made in Detroit, Inc., 299 B.R. 170 (Bankr. E.D. Mich. 2003) ("Plan cannot be based on 'visionary promises;" it must be doable.").

62.     Here, the Debtor proposes to establish feasibility through the credible testimony of the Debtor's financial advisor and its managing member.    Declarations of Charles "Chip" Hoebeke, the Debtor's financial advisor, and Mark A. Sellers, III, the Debtor's managing member, are attached as **Exhibit A** and **B** to this Brief (collectively, the "Declarations") and incorporated herein by reference.    The Declarations show that the Debtors' plan projections are a reliable and accurate prediction of the Reorganized Debtor's operating future and there will be sufficient operating income to support the Plan payments.    Based on the Declarations, section 1129(a)(11) is satisfied because there is a reasonable assurance of success of the Debtors' Modified Plan.

### xii.     Section 1129(a)(12) is satisfied

63.     Section 1129(a)(12) is satisfied because 28 U.S.C. 1930(a)(2)(A) specifically exempts Subchapter V debtors from paying any UST fees:

> [subject to an inapplicable exception,] "in addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States Trustee, for deposit in the Treasury, in each case under Chapter 11 of Title 11, other than under subchapter v ...."

28 U.S.C. 1930(a)(2)(A).  Notwithstanding the exemption, section 12.7 of the Plan provides for the payment of fees under 28 U.S.C. 1930, if any. *See* DN 82, at § 12.7.  Thus, section 1129(a)(12) is satisfied.

### xiii.     Section 1129(a)(13) is inapplicable

64.     Section 1129(a)(13) is not applicable in the Subchapter V Cases because the Debtors are not required to pay any "retiree benefits" as defined in section 1114.

### xiv.     Section 1129(a)(14) is inapplicable

65.     Section 1129(a)(14) is not applicable because the Debtors are not required to pay any domestic support obligations (as defined in section 101(51A) of the Bankruptcy Code).

**xv.    Section 1129(a)(15) is inapplicable**

66.    Section 1129(a)(15) is not applicable to the Subchapter V Cases by virtue of section 1181(a).

**xvi.    Section 1129(a)(16) is inapplicable**

67.    Section 1129(a)(16) is not applicable here because the contemplated transfers are not property of a nonprofit entity. Notwithstanding the forgoing, transfers provided for under the Modified Plan shall be made in accordance with applicable non-bankruptcy law.

**Conclusion**

68.    The Court should enter an order confirming the Modified Plan because section 1191(a) is satisfied because all of the subsections of section 1129(a) are satisfied.

**WHEREFORE**, the Debtors respectfully request this Honorable Court enter an order substantially in the form of the Conformation Order (i) determining the modifications contained in the Plan Modification and Confirmation Order do not adversely change the treatment of any class, and ballots cast to accept or reject the Plan shall be deemed cast to accept or reject the Modified Plan pursuant to Fed. R. Bankr. P. 3019(a); and (ii) confirming the Modified Plan under section 1129(b).

*[Signature Block Follows]*

Respectfully submitted,

SCHAFER AND WEINER, PLLC

/ s / John J. Stockdale, Jr.
JOSEPH K. GREKIN (P52165)
JOHN J. STOCKDALE, JR. (P71561)
Counsel to the Debtors
40950 Woodward Avenue, Suite 100
Bloomfield Hills, MI  48304
(248) 540-3340
jstockdale@schaferandweiner.com

Dated:  March 29, 2021

# EXHIBIT A

EXHIBIT __A__

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In Re:                                    Case No. 20-03322

                                          Chapter 11 (Subchapter V)
AUTHENTIKI, LLC, et al.[1]                Jointly Administered

           Debtors.                       Honorable James W. Boyd
_____/

## DECLARATION OF CHARLES (CHIP) HOEBEKE IN SUPPORT OF
## CONFIRMATION OF MODIFIED SUBCHAPTER V PLAN OF REORGANIZATION

In support of confirmation of the above-captioned Debtors' *Subchapter V Plan of Reorganization* [DN 82] (the "Plan)[2] as modified by *Modification to Debtors' Subchapter V Plan of Reorganization* [DN 106] (the "Plan Modification"), the Plan Supplement [DN 107], and the proposed Confirmation Order (filed contemporaneously herewith)[3], I, Charles (Chip) Hoebeke, declare as follows:

1.      I am a certified public accountant, certified restructuring & insolvency advisor, and fellow of INSOL International.

2.      I have been with Rehmann for 22 years, and I am currently the director of its turnaround, restructuring, and insolvency practice.

3.      A copy of my curriculum vitae is attached as **Exhibit 1** and is incorporated herein by reference.

4.      Rehmann has been retained as the financial advisor to the Debtors in the Subchapter V Cases.

---

[1] The Debtors are Authentiki, LLC, Case No. 20-03322 and MSSH, LLC, Case No. 20-03323.

[2] Except as otherwise noted herein to the contrary, all capitalized terms have the meanings ascribed to them in the Plan or Modified Plan (defined herein).

[3] The Plan, Plan Modification, and *Plan Supplement* are collectively the "Modified Plan".

5.     Prior to and since the Petition Date, I have reviewed and analyzed the Debtors' financial operations and the monthly operating reports filed by the Debtors in the Subchapter V Cases.

6.     I consulted with the Debtors' management regarding the Debtors' business operations and financial results.

7.     I assisted the Debtors with the negotiation, preparation, and structure of the Plan and Modified Plan.

8.     I have reviewed the Plan, Modified Plan, and Confirmation Order.

9.     Together with Mark A. Sellers, III, the Debtors' manager and managing member, I prepared the plan projections attached to the Plan and Modified Plan.  A copy of the projections are attached as **Exhibit 2** and incorporated herein by reference. The plan projections were based on Debtors' operating history including, without limitation, during the brief reopening of restaurants in Michigan to fifty percent (50%) capacity during late 2020 as well as my experience and the experience of Mr. Sellers.  I believe that it is likely that the Debtors will achieve the performance estimated by the plan projections.

*[Remainder of this page intentionally left blank]*

10.    Based on the plan projections and the terms of the Modified Plan, if confirmed, the Debtor's business will (1) continue as a going concern employing approximately 52 people in the Grand Rapids area and (2) provide an estimated return of approximately 52% on the Unsecured Claims.

11.    I believe this Court should approve the Modified Plan because it is in the best interests of the estate and all of its creditors.

12.    Declarant says nothing further.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the above statements are true and correct.

    _/s/ *Charles Hoebeke*_
    Charles Hoebeke, Declarant

Dated:  March 26, 2021

# EXHIBIT 1



# Charles (Chip) Hoebeke
## CPA, CIRA, Fellow INSOL International
## Director of Consulting
## Director of
## Turnaround, Restructuring, and Insolvency Practice



### Contact Information
Phone: 616.975.2830
Cell:    616.308.2821
Email:  chip.hoebeke@rehmann.com

### Areas of Service
Receivership
Chief Restructuring Officer
Turnaround
Insolvency Consulting
Litigation Support
Debt Restructuring
Asset Tracing

## Professional Experience

Chip has been with Rehmann for more than twenty two years.  His industry experience includes businesses in the healthcare, oil/gas, service, construction and manufacturing industries.

Chip heads up the Consulting Division for the firm.  He is responsible for the Business Valuation, Litigation Support, Mergers & Acquisitions, and Corporate Investigation Service lines.

He is also the leader of the firm's turnaround and restructuring practice.  Chip strives to find creative solutions to problems, whether dealing with complex international issues or local, domestic challenges.  Chip has served as a **Court Appointed Receiver**, a **Chief Restructuring Officer**, and worked in many **out of court** settings.  He has experience taking over businesses and operating them until sale and in projects involving orderly wind-downs or liquidation.  Chip has been appointed as a fiduciary in International, Federal, and State proceedings.  He also frequently testifies in a variety of matters.

Chip is a Board Member for the National Association of Federal Equity Receivers.  He also heads up the **International** committee and is a member of the **Conference** and **Judicial Outreach** committees.  As part of the NAFER International committee, he has been chaired the organization's Offshore Conferences in the Cayman Islands for 2017 and 2018.



Rehmann is a part of an international professional firm association called Nexia. Chip is a member of that organization's Turnaround, Restructuring and Insolvency special interest group which focuses on supporting member firms on a worldwide basis. This organization includes member firms from various members of the European Union, the Caribbean, and the Pacific Rim.

Chip also is a Fellow of INSOL International. INSOL is the leading international insolvency body and accepts 20 candidates for Fellowship annually. After completing the required coursework, including becoming familiar with insolvency law and financial practices in every major national insolvency jurisdiction, and passing the required examinations, INSOL names success candidates Fellows. Chip completed his Fellowship course and was accepted into Fellowship in 2018.

Chip has been recognized for his work as a Federal Equity Receiver by Judge Bell in the Federal Western District Court in Michigan. Additionally, Rehmann is pre-qualified by the State of Michigan to serve as a Certified Restructuring and Transformation Services firm.

## Education and Ongoing Academic Experience
Chip is a graduate of Aquinas College with a Bachelor of Science degree with dual majors in Accounting and Business Administration.

Chip is currently a member of the Aquinas College Accounting Department Advisory Committee and previously served as Adjunct Faculty at Aquinas College teaching Auditing and Cost Accounting for several years.

## Professional Organizations
Turnaround Management Association
Association of Insolvency and Restructuring Advisors
Michigan Association of Certified Public Accountants
Nexia Turnaround, Restructuring, and Insolvency Special Interest Group
National Association of Federal Equity Receivers
INSOL International

## Selection of Court Appointments
**United States District Court for the Western District of Michigan**
> **Case No. 14:-cv-00782-RJJ**
> **Pension Benefit Guarantee Corporation v. Evans Tempcon, Inc.**
> <u>**Receivership**</u> **Appointment April 25, 2015**

**United States Bankruptcy Court for the Northern District of Texas**
> **Case No. 17-40120-rfn11**
> **Arabella Exploration, LLC Debtor**
> <u>**Chief Restructuring Officer**</u> **Appointment January 24, 2017**

**State of Michigan in the 8th Circuit Court for the County of Ionia**
> **Case No. 12-H29551-ck**
> **First Financial Bank v. Gary P Hutnik DDS**
> <u>**Receivership Appointment**</u> **November 30, 2012**



State of Michigan in the Circuit Court for the County of Bay
     Case No.  11-3534-ch
     Independent Bank v. Vanpoppelen Brothers, Inc.
     <u>Receivership Appointment</u> September 6, 2011

State of Michigan in the 13th Circuit Court for the County of Leelanau
     Case No.  14-9214-ck
     First Financial Bank  v. Bingham Partners, Inc.
     <u>Receivership Appointment</u> December 19th, 2014

**Rehmann**

# EXHIBIT 2

{00563686.1}

Authentiki
Cash Flow Projection

| | 21-May | 21-Jun | 21-Jul | 21-Aug | 21-Sep | 21-Oct | 21-Nov | 21-Dec | 22-Jan | 22-Feb | 22-Mar | 22-Apr | May 2022 thru April 2023 | May 2023 thru May 2024 | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts (Revenue)** | | | | | | | | | | | | | | | |
| Food | $159,274 | $142,254 | $143,351 | $179,269 | $143,480 | $143,537 | $179,502 | $143,666 | $179,664 | $143,796 | $143,853 | $143,911 | $ 1,876,089 | $ 1,958,599 | |
| Pizza | 39,819 | 35,563 | 35,838 | 44,817 | 35,870 | 35,884 | 44,876 | 35,917 | 44,916 | 35,949 | 35,963 | 35,978 | 469,022 | 489,650 | |
| Liquor | 136,976 | 122,338 | 123,282 | 154,171 | 123,393 | 123,442 | 154,372 | 123,553 | 154,511 | 123,664 | 123,714 | 123,763 | 1,613,437 | 1,684,395 | |
| Draft Beer | 4,778 | 4,268 | 4,301 | 5,378 | 4,304 | 4,306 | 5,385 | 4,310 | 5,390 | 4,314 | 4,316 | 4,317 | 56,283 | 58,758 | |
| Wine | 3,185 | 2,845 | 2,867 | 3,585 | 2,870 | 2,871 | 3,590 | 2,873 | 3,593 | 2,876 | 2,877 | 2,878 | 37,522 | 39,172 | |
| Retail | 14,335 | 12,803 | 12,902 | 16,134 | 12,913 | 12,918 | 16,155 | 12,930 | 16,170 | 12,942 | 12,947 | 12,952 | 168,848 | 176,274 | |
| GROSS Receipts | 358,367 | 320,071 | 322,539 | 403,355 | 322,830 | 322,959 | 403,880 | 323,250 | 404,244 | 323,541 | 323,670 | 323,800 | 4,221,201 | 4,406,848 | |
| **Employee Perks (SR&A)** | | | | | | | | | | | | | | | |
| Discounts (servers/managers) | 3,584 | 3,201 | 3,225 | 4,034 | 3,228 | 3,230 | 4,039 | 3,232 | 4,042 | 3,235 | 3,237 | 3,238 | 42,212 | 44,068 | |
| Employee/Manager Meals | 3,584 | 3,201 | 3,225 | 4,034 | 3,228 | 3,230 | 4,039 | 3,232 | 4,042 | 3,235 | 3,237 | 3,238 | 42,212 | 44,068 | |
| Employee Training | 896 | 800 | 806 | 1,008 | 807 | 807 | 1,010 | 808 | 1,011 | 809 | 809 | 809 | 10,553 | 11,017 | |
| Total Perks (SR&A) | 8,063 | 7,202 | 7,257 | 9,075 | 7,264 | 7,267 | 9,087 | 7,273 | 9,095 | 7,280 | 7,283 | 7,285 | 94,977 | 99,154 | |
| NET CASH RECEIPTS | 350,303 | 312,869 | 315,282 | 394,280 | 315,566 | 315,692 | 394,793 | 315,976 | 395,148 | 316,261 | 316,387 | 316,514 | 4,126,224 | 4,307,694 | |
| **Purchases Goods Sold (COGS)** | | | | | | | | | | | | | | | |
| Food | 46,189 | 41,254 | 41,572 | 51,988 | 41,609 | 41,626 | 52,056 | 41,663 | 52,103 | 41,701 | 41,717 | 41,734 | 544,066 | 567,994 | |
| Liquor | 34,244 | 30,585 | 30,820 | 38,543 | 30,848 | 30,861 | 38,593 | 30,888 | 38,628 | 30,916 | 30,928 | 30,941 | 403,359 | 421,099 | |
| Draft Beer | 1,195 | 1,067 | 1,075 | 1,345 | 1,076 | 1,077 | 1,346 | 1,077 | 1,347 | 1,078 | 1,079 | 1,079 | 14,071 | 14,689 | |
| Wine | 796 | 711 | 717 | 896 | 717 | 718 | 898 | 718 | 898 | 719 | 719 | 720 | 9,380 | 9,793 | |
| Retail | 5,017 | 4,481 | 4,516 | 5,647 | 4,520 | 4,521 | 5,654 | 4,525 | 5,659 | 4,530 | 4,531 | 4,533 | 59,097 | 61,696 | |
| TOTAL | 87,441 | 78,097 | 78,700 | 98,419 | 78,770 | 78,802 | 98,547 | 78,873 | 98,635 | 78,944 | 78,975 | 79,007 | 1,029,973 | 1,075,271 | |
| GROSS PROFIT | 262,862 | 234,772 | 236,583 | 295,861 | 236,796 | 236,890 | 296,246 | 237,104 | 296,513 | 237,317 | 237,412 | 237,507 | 3,096,251 | 3,232,423 | |

EXHIBIT 2

## Operating Expenses

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll & Benefits-Hourly Staff | 70,000 | 75,000 | 80,000 | 124,000 | 88,000 | 88,000 | 88,000 | 88,000 | 138,000 | 94,000 | 94,000 | 94,000 | 1,326,000 | 1,431,000 |
| ADT | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 1,625 | 2,167 | 2,167 | 2,167 | 28,167 | 29,250 |
| Equipment Rental | 817 | 654 | 654 | 817 | 654 | 654 | 817 | 654 | 817 | 654 | 654 | 654 | 8,500 | 8,827 |
| Ice Machine | 769 | 615 | 615 | 769 | 615 | 615 | 769 | 615 | 769 | 615 | 615 | 615 | 8,000 | 8,308 |
| Linen/Rags | 3,462 | 2,769 | 2,769 | 3,462 | 2,769 | 2,769 | 3,462 | 2,769 | 3,462 | 2,769 | 2,769 | 2,769 | 36,000 | 37,385 |
| Repairs & Maintenance (R&M) | 3,846 | 3,077 | 3,077 | 3,846 | 3,077 | 3,077 | 3,846 | 3,077 | 3,846 | 3,077 | 3,077 | 3,077 | 40,000 | 41,538 |
| Outside Cleaning Services | 4,327 | 3,462 | 3,462 | 4,327 | 3,462 | 3,462 | 4,327 | 3,462 | 4,327 | 3,462 | 3,462 | 3,462 | 45,000 | 46,731 |
| Payroll Service | 324 | 324 | 324 | 486 | 324 | 324 | 324 | 324 | 486 | 324 | 324 | 324 | 4,212 | 4,536 |
| Pest Control | 240 | 192 | 192 | 240 | 192 | 192 | 240 | 192 | 240 | 192 | 192 | 192 | 2,500 | 2,596 |
| Refrigeration & Oven Preventative | 1,442 | 1,154 | 1,154 | 1,442 | 1,154 | 1,154 | 1,442 | 1,154 | 1,442 | 1,154 | 1,154 | 1,154 | 15,000 | 15,577 |
| R&M Supplies | 433 | 346 | 346 | 433 | 346 | 346 | 433 | 346 | 433 | 346 | 346 | 346 | 4,500 | 4,673 |
| Waste | 1,154 | 923 | 923 | 1,154 | 923 | 923 | 1,154 | 923 | 1,154 | 923 | 923 | 923 | 12,000 | 12,462 |
| Office Supplies | 240 | 192 | 192 | 240 | 192 | 192 | 240 | 192 | 240 | 192 | 192 | 192 | 2,500 | 2,596 |
| Paper Goods | 240 | 192 | 192 | 240 | 192 | 192 | 240 | 192 | 240 | 192 | 192 | 192 | 2,500 | 2,596 |
| Postage | 20 | 16 | 16 | 20 | 16 | 16 | 20 | 16 | 20 | 16 | 16 | 16 | 210 | 218 |
| Printing | 1,154 | 923 | 923 | 1,154 | 923 | 923 | 1,154 | 923 | 1,154 | 923 | 923 | 923 | 12,000 | 12,462 |
| Computer & Internet | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | - | - | - | - | - | - |
| Cash short/over | 202 | 162 | 162 | 202 | 162 | 162 | 202 | 162 | 202 | 162 | 162 | 162 | 2,100 | 2,181 |
| Credit Card Fees | 4,750 | 3,800 | 3,800 | 4,750 | 3,800 | 3,800 | 4,750 | 3,800 | 4,750 | 3,800 | 3,800 | 3,800 | 49,400 | 51,300 |
| Dues & Subscriptions | 337 | 270 | 270 | 337 | 270 | 270 | 337 | 270 | 337 | 270 | 270 | 270 | 3,507 | 3,642 |
| Business Licenses/Permits | 505 | 404 | 404 | 505 | 404 | 404 | 505 | 404 | 505 | 404 | 404 | 404 | 5,250 | 5,452 |
| Advertising | 2,019 | 1,615 | 1,615 | 2,019 | 1,615 | 1,615 | 2,019 | 1,615 | 2,019 | 1,615 | 1,615 | 1,615 | 21,000 | 21,808 |
| Contributions | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Employee Relations | 577 | 462 | 462 | 577 | 462 | 462 | 577 | 462 | 577 | 462 | 462 | 462 | 6,000 | 6,231 |
| PR | 606 | 485 | 485 | 606 | 485 | 485 | 606 | 485 | 606 | 485 | 485 | 485 | 6,300 | 6,542 |
| Smallwares | 1,010 | 808 | 808 | 1,010 | 808 | 808 | 1,010 | 808 | 1,010 | 808 | 808 | 808 | 10,500 | 10,904 |
| Restaurant Supplies | 962 | 769 | 769 | 962 | 769 | 769 | 962 | 769 | 962 | 769 | 769 | 769 | 10,000 | 10,385 |
| Kitchen Supplies | 962 | 769 | 769 | 962 | 769 | 769 | 962 | 769 | 962 | 769 | 769 | 769 | 10,000 | 10,385 |
| Glassware/China/Flatware | 2,885 | 2,308 | 2,308 | 2,885 | 2,308 | 2,308 | 2,885 | 2,308 | 2,885 | 2,308 | 2,308 | 2,308 | 30,000 | 31,154 |
| Phone | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,900 | 4,200 |
| Electric | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 48,750 | 52,500 |
| Gas | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 18,417 | 19,833 |
| Water/Sewer | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 4,875 | 5,250 |
| Total Cash Paid :Operating Expenses | 109,957 | 108,366 | 113,366 | 164,119 | 121,366 | 121,366 | 127,957 | 121,366 | 178,911 | 128,699 | 128,699 | 128,699 | 1,777,087 | 1,902,520 |

**Other P&L Cash Disbursements**

| | | | | | | | | | | | | | | | Note |
|---|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|
| Legal Fees | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 43,333 | 26,667 | |
| Corporate Salaries | 36,000 | 24,000 | 24,000 | 24,000 | 30,000 | 30,000 | 45,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 390,000 | 390,000 | |
| Insurance (Liz/Gen) | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 108,333 | 116,667 | |
| Property Taxes, Insurance | - | - | - | 50,000 | - | - | - | - | - | - | - | - | 53,000 | - | 4 |
| Rent Payments | 22,216 | 14,216 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 373,675 | 375,298 | |
| Tax and financial advisory fees | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 40,000 | 39,000 | 2 |
| Emergency R&M Fund | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 | 14,000 | |
| | 74,883 | 54,883 | 73,656 | 123,656 | 79,656 | 79,656 | 94,656 | 79,656 | 79,656 | 79,656 | 79,656 | 79,656 | 1,021,342 | 961,631 | |

**Balance Sheet Cash Activity**

| | | | | | | | | | | | | | | | Note |
|---|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|
| Capital lease Principal Payments | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 91,000 | 91,000 | |
| GFS 503(b) claim | 6,697 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Disputed GFS PACA claim | 6,895 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| CS V Trustee fees | 20,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 |
| Property taxes | 45,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 |
| Personal Property taxes | 15,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Wolverine | - | 3,802 | 3,802 | 7,604 | 3,802 | 3,802 | 7,604 | 3,802 | 7,604 | 3,802 | 7,604 | 3,802 | 64,634 | 15,208 | |
| Levitation | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 35,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 25,000 | - | |
| BIDI | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 1,462 | 731 | 731 | 731 | 9,503 | 9,503 | |
| Payment to unsecured creditors | - | - | - | - | - | - | - | - | - | - | - | - | 154,903 | 309,806 | 1 |
| Capital Asset Purchases | - | - | - | - | - | - | - | - | - | - | - | - | 50,000 | 25,000 | |
| | 106,123 | 16,533 | 36,533 | 20,335 | 16,533 | 46,533 | 20,335 | 16,533 | 21,066 | 16,533 | 20,335 | 31,533 | 395,040 | 450,517 | |

| | | | | | | | | | | | | | | |
|---|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|
| NET CASH FLOW | (28,101) | 54,991 | 13,028 | (12,249) | 19,241 | (10,684) | 53,298 | 19,549 | 16,880 | 12,429 | 8,722 | (2,381) | (97,218) | (82,245) |
| BEGINNING CASH BALANCE | 125,000 | 96,899 | 151,889 | 164,918 | 152,669 | 171,910 | 161,246 | 214,544 | 234,093 | 250,973 | 263,403 | 272,125 | 269,744 | 172,526 |
| ENDING CASH BALANCE | $ 96,899 | $151,889 | $164,918 | $152,669 | $171,910 | $161,246 | $214,544 | $234,093 | $250,973 | $263,403 | $272,125 | $269,744 | $ 172,526 | $ 90,281 |

notes

Note 1. Payments to unsecured creditors are due in three installments. The first is due June 2022, the second June 2023, and the third in June 2024. As these schedules run only thru May 2024, the third payment is included with the second total on the schedule.

Note 2   Tax and financial advisory fees include both those incurred during the case in addition to ongoing tax work and financial consulting post confirmation.

Note 3   The property taxes and personal property taxes included in the Balance sheet activity section represent those past due amounts that must be brought current as of the effective date.

Note 4   These property tax obligations represent the ongoing future obligations to be paid as they come due.

# EXHIBIT B

EXHIBIT $\underline{B}$

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MICHIGAN

In Re:                                          Case No. 20-03322

                                                Chapter 11 (Subchapter V)
AUTHENTIKI, LLC, et al.[1]                      Jointly Administered

                Debtors.                        Honorable James W. Boyd

_____/

### DECLARATION OF MARK A. SELLERS, III IN SUPPORT OF CONFIRMATION
### OF MODIFIED SUBCHAPTER V PLAN OF REORGANIZATION

In support of confirmation of the above-captioned debtors' *Subchapter V Plan of Reorganization* [DN 82] (the "Plan)[2] as modified by *Modification to Debtors' Subchapter V Plan of Reorganization* [DN 106] (the "Plan Modification"), the *Plan Supplement* [DN 107][3], and the proposed confirmation order (the "Confirmation Order") (filed contemporaneously herewith), I, Mark A. Sellers, III, declare as follows:

1.      I am the manager of Authentiki, LLC ("Authentiki"), a Michigan limited liability company with its principal place of business at 58 Ionia Avenue SW, Grand Rapids, Michigan 48503 (the "Restaurant Location").

2.      I own 45.93% of Authentiki's outstanding membership interests.

3.      Authentiki was established in July 2018 to own and operate tiki-themed restaurants through wholly owned subsidiaries. To date, Authentiki has only established one subsidiary that operates one restaurant.

---

[1] The Debtors are Authentiki, LLC, Case No. 20-03322 and MSSH, LLC, Case No. 20-03323.

[2] Except as otherwise noted herein to the contrary, all capitalized terms have the meanings ascribed to them in the Plan, Plan Modification, or Confirmation Order, as the case may be.

[3] The Plan, Plan Modification, and *Plan Supplement* are collectively the "Modified Plan".

{00896511.3}                            1

4.     Authentiki owns 100% of the outstanding member units of MSSH, LLC d/b/a Max's South Seas Hideaway ("MSSH"), which was formed in April 2019 and operates a tiki-themed restaurant, Max's South Seas Hideaway, (the "Restaurant") in Grand Rapids, Michigan.

5.     Authentiki and MSSH (collectively, the "Debtors" and each a "Debtor") filed for bankruptcy protection under Subchapter V of Chapter 11 of the United States Code (the "Bankruptcy Code") on October 29, 2020 (the "Petition Date").

6.     The Debtors' filed the Plan on January 28, 2021 and filed their *Plan Supplement* and Plan Modification on March 12, 2021.  *See* DN 82, 106, 107.

7.     I authorized Schafer and Weiner, PLLC ("S&W") and Rehmann to negotiate with the other parties-in-interest and prepare the Plan and Modified Plan in order to (i) preserve the Debtors' business as a going concern and (ii) maximize the return to unsecured creditors.

8.     I reviewed with S&W and Rehmann the terms of, authorized, and approved the Plan prior to its filing.

9.     I also reviewed with S&W and Rehmann, authorized, and approved the terms of the Plan Modification, the *Plan Supplement*, and Confirmation Order prior to their filing, including, without limitation, the resolution of informal plan objections received from (i) Chase, (ii) GFS, (iii) the UST, (iv) the SBA, (v) the IRS, and (vi) Levitation.

10.     I am informed by S&W that all Classes of Claim and Interests have voted to approve the Plan, and Class IX voted to approve the Plan as modified by the Confirmation Order.

11.     I am informed that the criteria for determining whether the Plan is proposed in "good faith" includes, among other things, (i) the preservation of the Debtor's business as a going concern and (ii) the maximization of the returns to unsecured creditors.

12.    I believe that the Plan and Modified Plan were proposed in "good faith" because if the Modified Plan is confirmed, (1) the Debtors' business will continue as a going concern employing approximately 52 people in the Grand Rapids area and (2) the Modified Plan provides an estimated return of approximately 52% on the Unsecured Claims.

13.    I also worked with Rehmann to prepare the plan projections attached to the Plan and Plan Modification.  A copy of the plan projections is attached as **Exhibit 1** to this declaration and incorporated herein by reference.  The plan projections were based on past operating history including, without limitation, the brief reopening of restaurants in Michigan to fifty percent (50%) capacity during 2020, my experience in the restaurant industry, and the experience of the Debtors' financial advisor, Rehmann.  I believe that it is likely that the Debtors will achieve the performance estimated by the plan projections.

14.    Pursuant to paragraph 7 of the *Order Scheduling Confirmation Hearing and Establishing Related Deadlines* [DN 88] (the "Scheduling Order"), the Debtors are opening a special account at Fifth Third Bank, which contains the money necessary to satisfy all payments required by the Debtors to be made on the Effective Date of the Modified Plan (the "Effective Date Payments").  The only payment anticipated to be made on the Effective Date is the payment to Gordon Food Service of $6,967.47 on account Administrative Claim Allowed under the proposed Confirmation Order.

*[Remainder of this page intentionally left blank]*

15.     I believe this Court should approve the Modified Plan because it is in the best interests of the Debtors' estates and all of their creditors.

16.     Declarant says nothing further.

Pursuant to 28 U.S.C. § 1746, I declare to the best of my knowledge, under penalty of perjury, that the above statements are true and correct.

/s/ *Mark A. Sellers, III*
Mark A. Sellers, III, Declarant

Dated:  March 29, 2021

# EXHIBIT 1

{00563686.1}

AuthentiId
Cash Flow Projection

| | 21-May | 21-Jun | 21-Jul | 21-Aug | 21-Sep | 21-Oct | 21-Nov | 21-Dec | 22-Jan | 22-Feb | 22-Mar | 22-Apr | May 2022 thru April 2023 | May 2023 thru May 2024 | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts (Revenue)** | | | | | | | | | | | | | | | |
| Food | $159,274 | $142,254 | $143,351 | $179,269 | $143,480 | $143,537 | $179,502 | $143,666 | $179,664 | $143,796 | $143,853 | $143,911 | $ 1,876,089 | $ 1,958,599 | |
| Pizza | 39,819 | 35,563 | 35,838 | 44,817 | 35,870 | 35,884 | 44,876 | 35,917 | 44,916 | 35,949 | 35,963 | 35,978 | 469,022 | 489,650 | |
| Liquor | 136,976 | 122,338 | 123,282 | 154,171 | 123,393 | 123,442 | 154,372 | 123,553 | 154,511 | 123,664 | 123,714 | 123,763 | 1,613,437 | 1,684,395 | |
| Draft Beer | 4,778 | 4,288 | 4,301 | 5,378 | 4,304 | 4,306 | 5,385 | 4,310 | 5,390 | 4,314 | 4,316 | 4,317 | 56,283 | 58,758 | |
| Wine | 3,185 | 2,845 | 2,867 | 3,585 | 2,870 | 2,871 | 3,590 | 2,873 | 3,593 | 2,876 | 2,877 | 2,878 | 37,522 | 39,172 | |
| Retail | 14,335 | 12,803 | 12,902 | 16,134 | 12,913 | 12,918 | 16,155 | 12,930 | 16,170 | 12,942 | 12,947 | 12,952 | 168,848 | 176,274 | |
| **GROSS Receipts** | 358,367 | 320,071 | 322,539 | 403,355 | 322,830 | 322,959 | 403,880 | 323,250 | 404,244 | 323,541 | 323,670 | 323,800 | 4,221,201 | 4,406,848 | |
| **Employee Perks (SR&A)** | | | | | | | | | | | | | | | |
| Discounts (servers/managers) | 3,584 | 3,201 | 3,225 | 4,034 | 3,228 | 3,230 | 4,039 | 3,232 | 4,042 | 3,235 | 3,237 | 3,238 | 42,212 | 44,068 | |
| Employee/Manager Meals | 3,584 | 3,201 | 3,225 | 4,034 | 3,228 | 3,230 | 4,039 | 3,232 | 4,042 | 3,235 | 3,237 | 3,238 | 42,212 | 44,068 | |
| Employee Training | 896 | 800 | 806 | 1,008 | 807 | 807 | 1,010 | 808 | 1,011 | 809 | 809 | 809 | 10,553 | 11,017 | |
| **Total Perks (SR&A)** | 8,063 | 7,202 | 7,257 | 9,075 | 7,264 | 7,267 | 9,087 | 7,273 | 9,095 | 7,280 | 7,283 | 7,285 | 94,977 | 99,154 | |
| **NET CASH RECEIPTS** | 350,303 | 312,869 | 315,282 | 394,280 | 315,566 | 315,692 | 394,793 | 315,976 | 395,148 | 316,261 | 316,387 | 316,514 | 4,126,224 | 4,307,694 | |
| **Purchase Goods Sold (COGS)** | | | | | | | | | | | | | | | |
| Food | 46,189 | 41,254 | 41,572 | 51,988 | 41,609 | 41,626 | 52,056 | 41,663 | 52,103 | 41,701 | 41,717 | 41,734 | 544,066 | 567,994 | |
| Liquor | 34,244 | 30,585 | 30,820 | 38,543 | 30,848 | 30,861 | 38,593 | 30,888 | 38,628 | 30,916 | 30,928 | 30,941 | 403,359 | 421,099 | |
| Draft Beer | 1,195 | 1,067 | 1,075 | 1,345 | 1,076 | 1,077 | 1,346 | 1,077 | 1,347 | 1,078 | 1,079 | 1,079 | 14,071 | 14,689 | |
| Wine | 796 | 711 | 717 | 896 | 717 | 718 | 898 | 718 | 898 | 719 | 719 | 720 | 9,380 | 9,793 | |
| Retail | 5,017 | 4,481 | 4,516 | 5,647 | 4,520 | 4,521 | 5,654 | 4,525 | 5,659 | 4,530 | 4,531 | 4,533 | 59,097 | 61,696 | |
| **TOTAL** | 87,441 | 78,097 | 78,700 | 98,419 | 78,770 | 78,802 | 98,547 | 78,873 | 98,635 | 78,944 | 78,975 | 79,007 | 1,029,973 | 1,075,271 | |
| **GROSS PROFIT** | 262,862 | 234,772 | 236,583 | 295,861 | 236,796 | 236,890 | 296,246 | 237,104 | 296,513 | 237,317 | 237,412 | 237,507 | 3,096,251 | 3,232,423 | |

EXHIBIT 1

## Operating Expenses

| | | | | | | | | | | | | | | |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| Payroll & Benefits-Hourly Staff | 70,000 | 75,000 | 80,000 | 124,000 | 88,000 | 88,000 | 88,000 | 88,000 | 138,000 | 94,000 | 94,000 | 94,000 | 1,326,000 | 1,431,000 |
| ADT | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 1,625 | 2,167 | 2,167 | 2,167 | 28,167 | 29,250 |
| Equipment Rental | 817 | 654 | 654 | 817 | 654 | 654 | 817 | 654 | 817 | 654 | 654 | 654 | 8,500 | 8,827 |
| Ice Machine | 769 | 615 | 615 | 769 | 615 | 615 | 769 | 615 | 769 | 615 | 615 | 615 | 8,000 | 8,308 |
| Linen/Rags | 3,462 | 2,769 | 2,769 | 3,462 | 2,769 | 2,769 | 3,462 | 2,769 | 3,462 | 2,769 | 2,769 | 2,769 | 36,000 | 37,385 |
| Repairs & Maintenance (R&M) | 3,846 | 3,077 | 3,077 | 3,846 | 3,077 | 3,077 | 3,846 | 3,077 | 3,846 | 3,077 | 3,077 | 3,077 | 40,000 | 41,538 |
| Outside Cleaning Services | 4,327 | 3,462 | 3,462 | 4,327 | 3,462 | 3,462 | 4,327 | 3,462 | 4,327 | 3,462 | 3,462 | 3,462 | 45,000 | 46,731 |
| Payroll Service | 324 | 324 | 324 | 486 | 324 | 324 | 324 | 324 | 486 | 324 | 324 | 324 | 4,212 | 4,536 |
| Pest Control | 240 | 192 | 192 | 240 | 192 | 192 | 240 | 192 | 240 | 192 | 192 | 192 | 2,500 | 2,596 |
| Refrigeration & Oven Preventative | 1,442 | 1,154 | 1,154 | 1,442 | 1,154 | 1,154 | 1,442 | 1,154 | 1,442 | 1,154 | 1,154 | 1,154 | 15,000 | 15,577 |
| R&M Supplies | 433 | 346 | 346 | 433 | 346 | 346 | 433 | 346 | 433 | 346 | 346 | 346 | 4,500 | 4,673 |
| Waste | 1,154 | 923 | 923 | 1,154 | 923 | 923 | 1,154 | 923 | 1,154 | 923 | 923 | 923 | 12,000 | 12,462 |
| Office Supplies | 240 | 192 | 192 | 240 | 192 | 192 | 240 | 192 | 240 | 192 | 192 | 192 | 2,500 | 2,596 |
| Paper Goods | 240 | 192 | 192 | 240 | 192 | 192 | 240 | 192 | 240 | 192 | 192 | 192 | 2,500 | 2,596 |
| Postage | 20 | 16 | 16 | 20 | 16 | 16 | 20 | 16 | 20 | 16 | 16 | 16 | 210 | 218 |
| Printing | 1,154 | 923 | 923 | 1,154 | 923 | 923 | 1,154 | 923 | 1,154 | 923 | 923 | 923 | 12,000 | 12,462 |
| Computer & Internet | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | - | - | - | - | - | - |
| Cash short/over | 202 | 162 | 162 | 202 | 162 | 162 | 202 | 162 | 202 | 162 | 162 | 162 | 2,100 | 2,181 |
| Credit Card Fees | 4,750 | 3,800 | 3,800 | 4,750 | 3,800 | 3,800 | 4,750 | 3,800 | 4,750 | 3,800 | 3,800 | 3,800 | 49,400 | 51,300 |
| Dues & Subscriptions | 337 | 270 | 270 | 337 | 270 | 270 | 337 | 270 | 337 | 270 | 270 | 270 | 3,507 | 3,642 |
| Business Licenses/Permits | 505 | 404 | 404 | 505 | 404 | 404 | 505 | 404 | 505 | 404 | 404 | 404 | 5,250 | 5,452 |
| Advertising | 2,019 | 1,615 | 1,615 | 2,019 | 1,615 | 1,615 | 2,019 | 1,615 | 2,019 | 1,615 | 1,615 | 1,615 | 21,000 | 21,808 |
| Contributions | - | - | | | | | | | | | | | | |
| Employee Relations | 577 | 462 | 462 | 577 | 462 | 462 | 577 | 462 | 577 | 462 | 462 | 462 | 6,000 | 6,231 |
| PR | 606 | 485 | 485 | 606 | 485 | 485 | 606 | 485 | 606 | 485 | 485 | 485 | 6,300 | 6,542 |
| Smallwares | 1,010 | 808 | 808 | 1,010 | 808 | 808 | 1,010 | 808 | 1,010 | 808 | 808 | 808 | 10,500 | 10,904 |
| Restaurant Supplies | 962 | 769 | 769 | 962 | 769 | 769 | 962 | 769 | 962 | 769 | 769 | 769 | 10,000 | 10,385 |
| Kitchen Supplies | 962 | 769 | 769 | 962 | 769 | 769 | 962 | 769 | 962 | 769 | 769 | 769 | 10,000 | 10,385 |
| Glassware/China/Flatware | 2,885 | 2,308 | 2,308 | 2,885 | 2,308 | 2,308 | 2,885 | 2,308 | 2,885 | 2,308 | 2,308 | 2,308 | 30,000 | 31,154 |
| Phone | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,900 | 4,200 |
| Electric | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 48,750 | 52,500 |
| Gas | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 18,417 | 19,833 |
| Water/Sewer | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 4,875 | 5,250 |
| Total Cash Paid :Operating Expenses | 109,957 | 108,366 | 113,366 | 164,119 | 121,366 | 121,366 | 127,957 | 121,366 | 178,911 | 128,699 | 128,699 | 128,699 | 1,777,087 | 1,902,520 |

**Other P&L Cash Disbursements**

| | | | | | | | | | | | | | | | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Legal Fees | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 43,333 | 26,667 | |
| Corporate Salaries | 36,000 | 24,000 | 24,000 | 24,000 | 30,000 | 30,000 | 45,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 390,000 | 390,000 | |
| Insurance (Liq/Gas) | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 8,333 | 108,333 | 116,667 | |
| Property Taxes, Insurance | - | - | - | 50,000 | - | - | - | - | - | - | - | - | 53,000 | - | 4 |
| Rent Payments | 22,216 | 14,216 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 32,989 | 373,675 | 375,298 | 2 |
| Tax and financial advisory fees | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 40,000 | 39,000 | |
| Emergency R&M Fund | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 | 14,000 | |
| | 74,883 | 54,883 | 73,656 | 123,656 | 79,656 | 79,656 | 94,656 | 79,656 | 79,656 | 79,656 | 79,656 | 79,656 | 1,021,342 | 961,631 | |

**Balance Sheet Cash Activity**

| | | | | | | | | | | | | | | | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Capital lease Principal Payments | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 91,000 | 91,000 | |
| GFS 503b9 claim | 6,697 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Disputed GFS PACA claim | 6,695 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| CH V Trustee fees | 20,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 |
| Property taxes | 45,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 |
| Personal Property taxes | 15,000 | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Wolverine | - | 3,802 | 3,802 | 7,604 | 3,802 | 3,802 | 7,604 | 3,802 | 7,604 | 3,802 | 7,604 | 3,802 | 64,634 | 15,208 | |
| Levitation | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 35,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 20,000 | 25,000 | - | |
| EIDL | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 731 | 1,462 | 731 | 731 | 731 | 9,503 | 9,503 | |
| Payment to unsecured creditors | - | - | - | - | - | - | - | - | - | - | - | - | 154,903 | 309,806 | 1 |
| Capital Asset Purchases | - | - | - | - | - | - | - | - | - | - | - | - | 50,000 | 25,000 | |
| | 106,123 | 16,533 | 36,533 | 20,335 | 16,533 | 48,533 | 20,335 | 16,533 | 21,066 | 16,533 | 20,335 | 31,533 | 395,040 | 450,517 | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **NET CASH FLOW** | (28,101) | 54,991 | 13,028 | (12,249) | 19,241 | (10,684) | 53,298 | 19,549 | 16,880 | 12,429 | 8,722 | (2,381) | (97,218) | (82,245) |
| **BEGINNING CASH BALANCE** | 125,000 | 96,899 | 151,889 | 164,918 | 152,669 | 171,910 | 161,246 | 214,544 | 234,093 | 250,973 | 263,403 | 272,125 | 269,744 | 172,526 |
| **ENDING CASH BALANCE** | $ 96,899 | $151,889 | $164,918 | $152,669 | $171,910 | $161,246 | $214,544 | $234,093 | $250,973 | $263,403 | $272,125 | $269,744 | $ 172,526 | $ 90,281 |

notes

Note 1. Payments to unsecured creditors are due in three installments. The first is due June 2022, the second June 2023, and the third in June 2024. As these schedules run only thru May 2024, the third payment is included with the second total on the schedule.

Note 2. Tax and financial advisory fees include both those incurred during the case in addition to ongoing tax work and financial consulting post confirmation.

Note 3. The property taxes and personal property taxes included in the Balance sheet activity section represent those past due amounts that must be brought current as of the effective date.

Note 4. These property tax obligations represent the ongoing future obligations to be paid as they come due.